Good morning and may it please the court, Eleodoro Moreno, Jr. for the petitioner, John Coquico. Through its de novo review, this court must hold that the BIA erred in finding that the DHS proved by clear, convincing, and unequivocal evidence that the petitioner is removable because his conviction under California Penal Code section 417.26 is not categorically a crime involving moral turpitude. This court must also hold that section 417.26 is not divisible. Thus, the modified categorical approach cannot be utilized and these proceedings must be terminated because the respondent has not been convicted of two crimes involving moral turpitude. Now, under the categorical approach as clarified by the Supreme Court recently in Decomps v. United States, this court must first find or identify the least culpable conduct prescribed by the state statute. Then it must compare that conduct to the definition of CIMT to determine whether it meets that definition. Now, we do have the robbery conviction and we're not challenging that? No, Your Honor, we are not. It's just the second conviction that would have triggered. Removability. Removability. Yes, Your Honor. So, I mean, then we must compare that and if it is covered by the definition, then it is categorically a CIMT. If not, of course, then we must determine whether the statute is divisible and whether the modified categorical approach may be applied. In this case, the least culpable conduct is pointing a laser pointer at a peace officer, even if the perpetrator didn't know that it was a peace officer, but should have. In this case, he did. Yes, Your Honor, but of course, his actual conduct doesn't matter under the categorical approach. And with the specific intent to cause an officer apprehension of bodily harm. Now, that conduct or a conviction for that conduct under this statute does not constitute moral turpitude. And that is primarily for three reasons. First, a laser pointer is simply not a deadly weapon. A deadly weapon is not mentioned anywhere in this statute. And this can be, and the laser pointer specifically contrasts from a laser scope because 417.25B specifically defines a laser scope as being able to be attached to a firearm. Is there anything in the record that might clarify whether, even though it's a laser pointer, it still could have the effect of creating a bodily injury, let's say to the eyes? No, Your Honor. There is nothing in the record that would identify that. Now, my second, the second reason it's not. Could you go back to on your first reason? Yes. You say it's not a deadly weapon. And the BIA analyzed it, as I understand it, as having an appearance of a deadly weapon. But the statute doesn't say anything about that, correct? No, it does not, Your Honor. And that's where the BIA erred. But beyond that, there is no case law, either the BIA or from this Court, that the petitioner could find that would identify that the appearance of a deadly weapon without any intending physical injury or actually causing injury rises to a level of moral turpitude. Now, going to my second point, a conviction under this statute does not require the intent to cause any harm at all. And actually, we would argue that through common sense, pointing a laser pointer can't cause any harm at all. In actuality, there is not even a de minimis touching that is required to violate this statute. Thirdly, the perpetrator need not know that the piece of the... I mean, leaving aside the laser pointer... Right. I gather the point of the statute is that because the laser can be used with a scope and is indicating somebody has targeted a rifle at somebody, that's what they're – that's what essentially that the statute's driving at, isn't it? Well, you... I mean, it's causing apprehension of fear. If you look down, if you're on the street and you see something that's on your chest that looks like a laser pointer and you're a peace officer, usually you're going to think that somebody's pointing a rifle at you, right? And that's correct, Your Honor. I would agree that that could be the sensible belief of the person that it's being pointed at. However, we have to look at what is the intent that is prescribed by the statute, the minimal intent here. And it's not the intent to actually cause any harm. It is simply the intent to cause apprehension of bodily harm, not even imminent or serious harm. And actually, again, harm cannot result from any act that is prescribed by this statute. Is it possible to cause someone apprehension of bodily harm if bodily harm can't actually occur? Yes, Your Honor, you can. And I believe that the way to get there would be the way that Judge Thomas just described, whether the officer believed that he was having some weapon pointed at him. But, again, I believe that that is irrelevant under the categorical approach because all we must look at is what conduct is prescribed here. Now, since – and I believe that this Court's case law specifically compels the conclusion that the least culpable conduct does not rise to the level of moral turpitude here. First, this Court in Fernandez-Ruiz analyzed an Arizona statute, which is very similar to the statute here. And the Court found that it did not rise to the level of a CIMT because the statute required neither willful conduct nor conduct resulting in bodily injury that is more than insubstantial. There, the Arizona statute proscribed the intentional placing of someone in reasonable apprehension of imminent physical injury. Of course, this statute doesn't require the apprehension of imminent physical injury, just apprehension of bodily harm. Now, similarly, in Galeana Mendoza v. Gonzalez, this Court found that California Penal Code 243e, which involves offensive touching of a protected class, a victim, here a spouse, the Court found that that was not a CIMT because there was no evidence that the offense occasioned actual or intended physical harm on the victim. Would you address the government's citation of this Latter-Singh case, in which is terrorism through speech, if you will? Yes. And in Latter-Singh, this Court specifically held that threats with intent to terrorize in violation of CPC 422 was categorically a CIMT for three main reasons. One, they said that the underlying conduct itself, intending to terrorize, was a CIMT. They said that 422 criminalizes the conduct which results in substantial harm by being so unequivocal, unconditional, immediate, and specific, as to convey to the person threatened the gravity of purpose and an immediate prospect of execution of the threat, and to cause the threatened person reasonably to be in sustained fear for his or her own safety or for his or her immediate family members. Now, that is markedly different here. This statute does not require that. All it requires is mere apprehension of bodily harm. Remind us again of the specific facts in this case relevant to that point. Okay. So this statute specifically only prescribes, you know, the apprehension, the placing, the specific intent to place the officer in apprehension, which is foreboding. But what does the record show in terms of any apprehension with respect to this case? As in whether the officer actually had apprehension, the record does not show that at all. The only thing in the record of conviction here is the charging document and then the minute order. All the minute order says is that the Petitioner pled guilty to 417.26. But your point, I thought, was that it wouldn't matter if the record showed the officer was reasonably in fear. Is that right? Yes. That doesn't matter because, again, under the categorical approach, we only look at the least culpable conduct prescribed by the statute. And I would reserve my time for the rest of my time for rebuttal. Thank you, counsel. We'll hear from the State. Let's go from the Attorney General. Good morning, Your Honors. May it please the Court. My name is Juria Jones, and I represent the Attorney General. The issue here is whether or not the Board correctly assessed that 417.26 is categorically a crime involving moral turpitude. And the determination of whether the conviction under this statute is categorically involves two steps. First, you identify the element of the statute of conviction. And the second step, you compare the elements. And the issue is not whether the actual conduct in this particular case constitutes a CMIT, but it's whether or not the full range of conduct here. And particularly, the generic definition of a CMT involves base, vile, or depraved conduct that shocks the public consciousness and is contrary to the rules of morality and duties owed to an individual. Petitioner is incorrect in stating that the statute doesn't require that. The statute requires specifically that the individual have the specific intent, which makes this not a simple assault, it's a specific intent crime, to point or aim a laser scope or laser pointer at a peace officer with a specific intent to cause that peace officer apprehension or fear of bodily harm and who knows or reasonably knows that the individual who he's aiming at is a peace officer. Okay. Well, take the scope out of it because it's clear we're not talking about the scope. We're talking about the pointer. Right. That's correct. But I was reading the statute. But the point of the matter is if you look at the language of what they're saying a pointer is, it's a handheld laser beam device that demonstrates a laser product, a single point of light similar to what a scope does when it's actually attached to a high-powered rifle. So in this real case, what's critical here is the mens rea, the evil intent that's involved. And here the fact of the matter is that you had an offender here with a specific intent to harm, and this deems it more serious than a simple assault. And moreover, the requirement that the offender have the knowledge that the victim is a peace officer exhibits a disregard for our morality rules and the duties owed to individuals. So how do you divine that in this case? Excuse me? How do you divine that intent here? Because it's the evil intent, the mens rea that's responsible for. I know. But how do you find that in this case? It's in the statute. It specifically says. I realize it's in the statute. Right. But all we have is the plea. Isn't that correct? Right. But this is a categorical analysis. So we don't even look. We just look at the statute. We don't look at the documents. That's only under a modified analysis where we'd actually look at the documents to see what the conviction record was. But since we're doing what we have to do. So what you're saying is this is a specific intent crime, and if he pled to it, that means he had the evil intent. That's what I mean. Exactly. He pled to all the elements of the statute. So we don't actually get to the facts of the case here. We just look at the language of the statute here. You know, what I was concerned about was the BIA's rationale, which talked about using this device which gives the appearance or facade of a deadly weapon. Where does that come from that's not in the statute? No, Your Honor. I mean, obviously, I'm not in the brain of the board member who wrote this. But if you're not. But we have to say. Right. They did what they did, right? Right. They did what they did. Exactly. If you look at the legislative intent of the statute, and also, I mean, I think given the news, there was some common sense that was involved here, too. If you look at the legislative intent. May I interrupt for a second? I'm sorry. Yes, sure. You're talking about common sense and legislative history, which means I think that you would agree that the BIA did not identify the elements of this crime correctly. I would not agree to that. I think that. Where in the BIA opinion did they identify the elements of this crime? The first paragraph before that, they list the elements of the crime. The problem with this particular. What page? Oh, on the record. I'm sorry. Hold on. Is page 3 before the record? Well, they quote part of the statute. I'm sorry? They quote part of the statute. But, I mean, basically, when you do a categorical approach, you compare the elements of the crime with the generic elements of whatever, whether you're talking about in this case a crime involving moral turpitude. Right, correct. They didn't do that specifically. Well, unfortunately, we don't have any California case law to help guide, because most of that's what often guides when in analysis of this. You look to the case law to determine whether or not there's moral turpitude. So. I guess I was asking a different question. Okay. The BIA did not conduct that analysis. True? The analysis. Yes. If that's your analysis, yes. They didn't conduct analysis. What the board member did in this particular case is that he looked at the particular language of the statute. He looked at the fact that it has a specific intent requirement, and he saw that the mens rea was there. So as an example, he said, in other words, the crime is committed against the peace officer with a specific intent to cause the officer fear of bodily harm. So to answer to your question, Your Honor, the legislative intent also talks about this misuse of laser pointers for at-peace officers, giving the appearance that there is a laser scope which is attached to a high-powered weapon that's involved. You know, it seems odd, too, though, as, you know, close in this statutory scheme in the California statutes, there's also a statute about being able to use laser pointers in schools. And it says that you can use laser pointers in schools if it's for instructional purposes. So if you've got kids using laser pointers and teachers using laser pointers, even under the BIA's logic, it's hard for me to understand why it has the appearance of a deadly weapon if you're going to put it in the hands of children. It's because it's the misuse of a laser pointer, particularly because of the fact that it is committed against a peace officer. It isn't saying you're using a laser pointer to point it at a screen. You're using a laser pointer, as the statute specifies, with a specific intent to cause that peace officer apprehension of fear of bodily harm. So you've taken this innocuous tool, and now you're using it as a tool of terror, in a sense, because you're using it to actually cause that peace officer fear of apprehension of bodily harm is imminent. And so, therefore, you may have a peace officer that reacts. That's why you do have these innocent uses of laser pointers, but the California law does not. Ginsburg. But it seems, you know, that the difficulty is this is an integrated statute of scopes and laser pointers. And so the intent is on the part of the defendant, not on the part of the peace officer. That's correct. And given that a laser pointer is used for all kinds of things, why does it become a deadly weapon simply because it's pointed at a police officer? Because of the intent of the perpetrator, of the offender in this particular case. Because in order to have a guilty conviction under the statute, you have to establish that the individual had the specific intent to cause that peace officer fear of apprehension of bodily harm, and he knew or should have reasonably known that it was a peace officer. So in terms of you are misusing this laser pointer as a tool to create chaos and hecticness, because now, all of a sudden, you're using this tool to cause that peace officer. Hecticness doesn't really rise to the level of moral turpitude, does it? No, but the evil intent does. The maliciousness that's involved here does. And that's exactly what we have here, is that the fact that the individual has the knowledge that he is pointing at a peace officer with the specific intent to cause him fear of apprehension of bodily harm, that's what characterizes as a crime of moral turpitude, because you have this evil intent. This is conduct that shocks the public consciousness. So in this case, which is a good example, I realize we're talking about the categorical approach. The guy goes into a courtroom, he gets his laser pointer is all the way through security, and then he just clicks it on and points to a peace officer during the trial. It's obvious he doesn't have a weapon, right? It's not obvious to the peace officer, and that's the whole point of why he actually pled guilty to the statute, because if this was true, then he wouldn't have pled guilty to it. Well, we don't know that. I'm sorry? We don't know. Well, we don't know that. You're right, Your Honor. Right. But in this particular case, though, you know, we don't have the facts in this scenario. All we have is the fact that he pled guilty to this particular statute with a specific intent. So he is pleading guilty to the fact that he had the specific intent to cause the peace officer fear of apprehension of bodily harm. And you're correct. The statute doesn't talk about the reasonableness of the peace officer. That's the California legislation of intent. That's what makes this not a simple assault. That's what makes this a specific intent crime, and therefore, that's why this is a So in conclusion, Your Honor, there is no realistic probability that the unlawful laser activity would encompass conduct that is not morally turpitudinous in this case. Thank you, counsel. Thank you very much. Mr. Moreno, you have a little bit of time left. And what about this peace officer issue that we just heard about? Well, yes, Your Honor. First, I would like to identify this statute does not require that the perpetrator actually know that it's a peace officer, just that the reasonable person knowing the facts that that person knew should have known. That's the first step there. But I would like to point out that it seems like the government is relying very heavily on the specific intent requirement. This court in Gonzales-Cervantes v. Holder from last year specifically said that specific intent alone will not render a crime morally turpitudinous if the acts at issue are trivial. I would posit here that the acts at issue are trivial. Now, again, if specific intent alone is enough to raise crime to the level of moral turpitude, then Fernandez-Ruiz would not have held the way it did because there, again, statute, the Arizona statute in that case specifically required intentionally placing another person in reasonable apprehension of imminent physical injury. Arizona statute 13-1203. And then the court found that that was not morally turpitudinous because, again, it did not require the intent to inflict actual physical injury or that physical injury actually resolved. Thus, this statute is not categorically a crime involving moral turpitude, and it is not divisible. Thus, this court cannot address the modified categorical approach. So remand is not appropriate, and the proceedings must be terminated. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown